City of Blair v. Lantry.

CITY OF BLAIR, APPELLEE, v. VICTOR G. LANTRY ET AL., APPELLANTS.

1. **Municipal Corporations:** CONTRACTS OF OFFICERS. The city council of a city of the second class, or any committee or member thereof, officer or department of the corporation, cannot incur any expense or enter into any contract, whether the object of the expenditure shall have been ordered by the city council or not, unless an appropriation shall have been previously made concerning such expense; except in cases where the proposition has been sanctioned by a majority of the legal voters of the city, etc.

2. ——: ——: LIABILITY OF OFFICERS. Where the mayor and council of a city of the second class drew an order upon the cemetery fund of such city for $716.66, there being at the time $1,000 in such fund in the treasury of such city, and applied the proceeds to the payment of lands purchased as an addition to the cemetery of such city, but no appropriation had been previously made concerning such expense; *Held*, No act of ratification being proved, that the mayor and clerk were liable for the amount drawn on such order.

APPEAL from the district court of Washington county. Heard below before NEVILLE, J.

*W. H. Eller, Congdon, Clarkson & Hunt,* and *Jesse T. Davis,* for appellants.

*George B. Lake* and *W. H. Farnsworth,* for appellee.

MAXWELL, CH. J.

In March, 1886, the plaintiff filed its petition in the district court of Washington county, stating its cause of action, as follows:

"1.    That it is a legally organized city of the second class.

"2.    That in May, 1884, the defendant Lantry was the mayor of the city of Blair, and the defendant Farr was the city clerk thereof.

"3.    That during the month of May, 1884, the plaintiff opened negotiations with the defendants Weimers for the purchase of a tract of land adjoining said town, and containing ten acres, which it desired for cemetery purposes. That in the month of September, 1884, and before such negotiations had been consummated, the defendants Lantry and Farr, conspiring with each other, and with the defendants Wiemers, to cheat and defraud the plaintiff, without any authority of law, in fraud of the rights of the plaintiff, drew a warrant on the treasurer of the city of Blair in favor of the defendant Lantry, for the sum of $716.66 for the pretended purchase of said land, and without the consent or authority of plaintiff, placed upon the records of Washington county a deed from the defendants Weimers, pretending to convey said land to the plaintiff.

"4.    Alleges that the plaintiff never purchased said lands, and that the deed from Weimers was a nominal conveyance only.

"5.    That at the time of such conveyance, said real estate was largely encumbered by mortgage in an amount

unknown to plaintiff.   That the title to said land was im-
perfect, and not complete in defendants Wiemers, and that
it was worth far less than the amount of the order above
referred to and the encumbrance thereon.

"6.   That on the 8th of September, 1884, the defendant
Lantry wrongfully presented said order to the treasurer
aforesaid and received therefrom the sum of $716.66 of
the funds of plaintiff, of which said amount plaintiff was
thereby defrauded.

"7.   That it has never taken possession of said land, or
exercised control or ownership thereof, nor ratified said
purchase, but has at all times disclaimed the same.

"8.   That before the commencement of this suit, plain-
tiff offered to reconvey said lands to defendant Weimers,
and demanded of each of the defendants the said sum of
$716.66, which was refused, and further offers now to
make a delivery of such conveyance."

The following is a copy of the order :

"$716.66.      BLAIR CITY ORDER.

BLAIR, Neb., Sept. 6th, 1884.

Cem. Fund.

The Treasurer of the Incorporated City of Blair,
pay to Victor G. Lantry, or order, Seven Hundred
and Sixteen and 66-100 Dollars.
           By order of City Council.

Edward J. Farr, Clerk.    Victor G. Lantry, Mayor.
[WEIMER LAND BUSINESS.]

" Endorsements thereon as follows, to-wit: [Victor G.
Lantry.]

" Prays that the above order may be adjudged unauthor-
ized and illegal; that the deed from defendants Weimers
to the plaintiff be adjudged unauthorized, null and void;
that the title in the lands be quieted in the defendants
Weimers and that the defendants, or such of them as the
court shall think proper, may be adjudged to refund to the

plaintiff the amount found due, with costs of suit, and for general relief.

*          *          *          *

"Thereafter and on April 5th, 1886, the defendants, Weimers, demurred to the petition for the reason that it did not state facts sufficient to constitute a cause of action against them. This demurrer was subsequently overruled.

*          *          *          *

"The defendant Farr answered, admitting that defendant Lantry was mayor of said city; that he was the clerk thereof, and alleging that John W. Boggs, Neil McMillan, Allen C. Jones, and Pat Quinlan were councilmen of said city, and Edward C. Jackson was treasurer thereof. That on the 10th day of July, 1884, a committee was appointed by the said city to confer with defendant Weimers with reference to buying the land in question for cemetery purposes; that said committee was composed of said McMillan, Jones, and Quinlan; that afterwards, on the 5th day of August, 1884, on motion, it was resolved that the city of Blair do purchase said ten acres of ground for cemetery purposes at the agreed price of $1,250, and that said D. D. Weimer present an abstract of title and necessary papers to close the purchase at the next regular meeting of the city council. That said minutes were approved by the council on the 18th of August following; that on the 1st day of September following, at a meeting of said council at which all members were present, on motion, the chairman of the Finance Committee, to-wit, John W. Boggs, above named, was instructed to close the contract with D. D. Weimer for ten acres of land for cemetery purposes when he was satisfied the title was good; and on motion, the clerk was instructed to draw a warrant for the sum of $761.66, when the said chairman of the finance committee reported to him the title good for the land bought of Weimer. That the minutes of said meeting above were approved September 5th, 1884. Further alleges

that in pursuance of the above resolutions and ordinances and relying upon said instructions, and in good faith, after the said purchase by said city had been completed fully by the said city and its agents, and after the said Boggs as chairman of said committee had reported to him that the title to said land was good, he drew the order complained of in the presence of said Boggs, with his knowledge and consent and under his directions, and payable to said V. G. Lantry, as ordered by him, for the reason as he [Boggs] said, that Lantry understood the business and would pay over the money to said Wiemers when the deed was made by them conveying said land to said city, which he believes said Lantry did so pay over to said Wiemers when said deed was delivered; that said order was drawn on the cemetery fund of said city in the amount named, and that the money belonging to said fund was in the treasury of said city at the time, and that the treasurer of said city honored said order and duly paid the same from the said cemetery fund in the sum of said $716.66, and that the balance due on said land, to-wit, the sum of $533.34, was secured by mortgage referred to in plaintiff's petition in favor of A. E. Wells, of Burt county; and that said mortgage includes all the encumbrance upon said title; and that said city is seized in fee simple in and to said premises whenever it pays said mortgage to said Wells with interest thereon as it agreed to do. Further alleges that he relied upon the acts of said plaintiff so openly done, published and announced as aforesaid; that he acted within the scope of his authority without connivance, collusion, conspiracy, or fraud. And further alleges that said lands were valuable and the only available that can be had as an addition to the cemetery of said plaintiff; that the present cemetery is already inadequate to its wants, and prays that the above proceedings be ratified and confirmed, and that he be dismissed with his costs."

&ast; &ast; &ast; &ast;

The defendant Lantry answered as follows:

"1.    Denies each and every allegation in the petition contained, except such as are expressly admitted.

"2.    Admits the organization of the city; that he was legally elected and qualified mayor.

"3.    Admits the negotiations by said city with said Weimers for the land described.

"4.    Admits the order mentioned was drawn in his favor, but avers that the same was drawn at the instance and request of said city; that the money was paid out for the use and benefit of Annie Weimer.

"5.    Denies any conspiracy, collusion, or fraud.

"6.    Denies that he had any part in the negotiations with said Weimer, or any one for her; that he never received and retained a cent of said money; was not profited by said purchase, either directly or indirectly.

"7.    Denies any tender of title, and prays to be dismissed."

The reply consists of denials.

On the trial the following decree was rendered :    "This cause coming on for trial at a former day of the present term, the plaintiff and defendants being present, it was submitted to the court upon the pleadings and testimony and was argued by counsel and taken under advisement, and now, on this day, the court being fully advised in the premises, finds, as to the said defendants Victor G. Lantry, Annie Weimer, and D. D. Weimer, that there was no fraud or conspiracy, and no intention to defraud, and finds that the warrant described in said petition was drawn and appropriated without authority of law, and the proceeds thereof should be refunded.

"It is therefore considered, adjudged, and decreed that the plaintiff, by its proper officers, within forty days, formally execute and deliver to the said Annie Weimer a quit-claim deed of the premises described in the plaintiff's petition and deposit the same with the clerk of this court for her use, namely :    [Description.]

"And it is further ordered and adjudged that upon the delivery of said deed the said Victor G. Lantry, Annie Weimer, and D. D. Weimer pay to this court for the use of the plaintiff the sum of $812.14, together with the costs of the plaintiff in this behalf expended, taxed at $ ———, and in default of such payment an execution issue therefor.

"It is further considered that the said defendant Farr go hence without day and recover from the plaintiff his costs herein."

The testimony shows the appropriation ordinance for the city of Blair for the fiscal year commencing on the first Tuesday of May, 1884, and ending on the first Tuesday of May, 1885, to be as follows:

"There is hereby appropriated out of the levy of taxes for the fiscal year commencing as above, the sums of money for the purposes and objects, to-wit:

| | |
|---|---|
| For street purposes..................................... | $500 |
| For fire purposes........................................ | 500 |
| For printing and stationery............................. | 150 |
| For criminal prosecution and jail fees ............... | 350 |
| For officers' salaries.................................... | 1,500 |
| Aggregating ....................................... | $3,000 |

" W. H. Farnsworth, sworn for the plaintiff, testified that he was city attorney; that he had examined the ordinances passed by the city during the year in controversy and in reference to the purchase of the land in question; that he found none in reference thereto; that he further examined them in reference to the appropriation ordinances and found none other than the ones offered in evidence."

The city clerk produced the records of the proceedings of the council in 1884, from which it appeared that on August 5th and 18th respectively the following orders were made:

"On motion it was ordered that the city of Blair, Ne-

braska, do purchase ten acres of ground for cemetery pur-
poses at the agreed price of $1,250, said ten acres being
north of the county road and adjoining Catholic and City
Cemetery on the east, and including all buildings and ap-
purtenances thereon; and said D. D. Weimer to present
an abstract of title and necessary papers to close purchase
at next regular meeting.

"On motion the charman on finance committee was in-
structed to close up the contract with D. D. Weimer for
ten acres of his land for cemetery purposes, when he was
confident the title was good.

"On motion the clerk was instructed to draw a warrant
for $716.66 when the chairman of finance committee re-
ported to him the title good for land bought of Weimer."

At the meeting of the council September 15, 1884, the
minutes of the preceding meeting were read and approved.

"J. W.Boggs made a verbal report that he did not think
the title to the Weimer land complete.

"On motion, the motion made September 1st, instructing
the finance committee to close up the bargain for the Wei-
mer land, was reconsidered.  Original motion coming up
was lost."

The clerk further testified that he found from the record
that Mr. Boggs was then chairman of the finance com-
mittee.

V. G. Lantry testified as follows:

"I am one of the defendants in this case and, commenc-
ing in May, 1884, was mayor of the city of Blair; that
after the city decided to purchase that land and authorized
the chairman of the finance committee to complete the
transaction, he called me into his office and told me that he
knew but little about abstracts and wished me to complete
it.  He authorized Mr. Farr to draw a check and have it
ready whenever I called for it, and I examined the ab-
stract and took the deed and took the money and paid for
it.  I put the deed on record.  I did that as a favor to

Mr. Boggs. I paid a mortgage of $525.80 to George B. Lane, and there was an existing mortgage in favor of A. E. Wells for $533.34. Deducting these items from $1,250, the agreed price, it left $190.86, which I paid to Mrs. Weimer, less $1.80 for mortgage discharge. I think I charged them but one dollar for drawing the discharge, and eighty cents for recording it. That was the disposition that I made of the money. This was done from the 6th to the 8th of September, 1884, and on the 15th of September, during my absence, Mr. Boggs reported the title was bad, and on the strength of that the city council ordered that transaction off. I think there is a minute to that effect on the record. That was the only transaction I had in the premises. There had been no tender of the title of this land by the city. The city attorney came to me and said he was directed by the city council to fix up that Weimer matter, and I think the language I used to the city attorney was, I told the city council to go to the place not polite to mention."

Edmond J. Farr testified as follows:

"I was city clerk in the year 1884. I was instructed by the city council, I think somewhere about September, that whenever the chairman of the finance committee reported to me that the title to the Wiemer land that they were trying to buy for cemetery purposes was good, to draw an order for $716.66. I think it was September 6th. Mr. Boggs came to my office with Mr. Lantry and told me that the title to the land was good, and told me to draw the order in favor of Mr. Lantry. I asked him if I should not draw it in his favor, and Mr. Lantry said it would be better to draw it in that way, and Mr. Boggs said, 'No, draw it in your name, Vic, because you understand the business. You go ahead and close up the deal'; and they went over to a desk near by and were talking there, and one of them told me the amount to draw. I did not know the exact amount at the time, and asked them, and they

told me, and I drew it in their presence. They started out, Mr. Boggs first and Mr. Lantry next, and as he got to the door I asked if he was going to take the order, and he said, 'No, I will call for it in a day or two; just leave it there. You need not tear it out of the book.' I think about September 8th I was away from town; Mr. Lantry came to my office and got the order. September 15th Mr. Lantry was absent from the meeting, and Mr. Boggs reported that he did not think that the title was good, and ordered the previous order rescinded, although it had been issued at his instance. I never got any of that money. Do not know personally what was done with it. I never saw the order after I issued it."

It was agreed that there was $1,000 in the cemetery fund in the city treasury at the time the order was drawn.

There is other testimony in the record to which it is unnecessary to refer.

Section 86 of chapter 14 of the Compiled Statutes provides that "The city council of cities, and board of trustees in villages, shall, within the first quarter of each fiscal year, pass an ordinance to be termed the annual appropriation bill, in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation, not exceeding in the aggregate the amount of tax authorized to be levied during that year; and in such ordinance shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose. No further appropriations shall be made at any other time within such fiscal year, unless the propositon to make such appropriation has been first sanctioned by a majority of the legal voters of such city or village, either by a petition signed by them or at a general or special election duly called therefor; and all appropriations shall end with the fiscal year for which they were made."

Sec. 87 of same chapter provides that "Before such annual appropriation bill shall be passed the council or trustees shall prepare an estimate of the probable amount of money necessary for all purposes to be raised in said city or village during the fiscal year for which the appropriation is to be made, including interest and principal due on the bonded debt and sinking fund, itemizing and classifying the different objects and branches of expenditures as near as may be, with a statement of the entire revenue of the city or village for the previous fiscal year, and shall enter the same at large upon its minutes, and cause the same to be published four weeks in some newspaper published or of general circulation in the city or village."

Section 88 of same chapter provides that "The mayor and council, or board of trustees, shall have no power to appropriate, issue, or draw any order or warrant on the treasurer for money unless the same has been appropriated or ordered by ordinance, or the claim, for the payment of which such order or warrant is issued, has been allowed according to the provisions of this chapter, and the appropriations for the class or object out of which such claim is payable has been made as provided in section 88. Neither the city council or board of trustees, nor any department or officer of the corporation, shall add to the corporation expenditures in any one year anything over and above the amount provided for in the annual appropriation bill for that year, except as herein otherwise specially provided; and no expenditure for any improvement, to be paid out of the general fund of the corporation, shall exceed in any one year the amount provided for such improvement in the annual appropriation bill; *Provided, however,* That nothing herein contained shall prevent the city council or board of trustees from ordering, by a two-thirds vote, the repair or restoration of any improvement, the necessity of which is caused by any casualty or accident happening after such annual appropriation is made. The city council or board

17

of trustees may, by a like vote, order the mayor or chairman of the board of trustees and finance committee to borrow a sufficient sum to provide for the expense necessary to be incurred in making any repairs or restoration of improvements, the necessity of which has arisen, as is last above mentioned, for a space of time not exceeding the close of the next fiscal year, which sum, and interest, shall be added to the amount authorized to be raised in the next general tax levy, and embraced therein. Should any judgment be obtained against the corporation, the mayor, or board of trustees, and finance committee, under the sanction of the city council or board of trustees, may borrow a sufficient amount to pay the same for a space of time not exceeding the close of the next fiscal year, which sum, and interest, shall in like manner be added to the amount authorized to be raised in the general tax levy of the next year, and embraced therein "; and section 89 of same chapter provides that " No contract shall hereafter be made by the city council or board of trustees, or any committee or member thereof, and no expense shall be incurred by any of the officers or departments of the corporation, whether the object of the expenditure shall have been ordered by the city council or board of trustees or not, unless an appropriation shall have been previously made concerning such expense, except as herein otherwise expressly provided."

It will be seen that no contract can be made by the city council or any committee or member thereof, or any expense incurred by any of the officers or departments of the corporation, whether such expense shall have been ordered by the city council or not, unless an appropriation shall have been previously made concerning such expense, except in certain cases where a further expenditure is sanctioned by a majority vote of the legal voters of the city, etc.

The testimony clearly shows that the appropriation or-

dinance in the year 1884 did not include the amount required for the purchase of the lands in question, and the case is not within any of the exceptions named in the statute. Hence the contract was directly prohibited. The city council, no doubt, in entering into negotiations for the purchase of the land in controversy, as also the defendants in this case, acted in the utmost good faith, and there is not a particle of proof tending to show fraud or collusion, or an intention to disregard the law. Their action, however, was entirely unauthorized, and for that reason the city is entitled to recover the money drawn upon the order.

Upon what theory the court below found against Lantry, and dismissed the action against Farr, we are unable to discover. The statute makes it the duty of the city clerk to countersign all warrants drawn upon the city treasurer, and provides that each warrant shall state the particular fund or appropriation to which the same is chargeable, and the person to whom payable, and for what particular object; and that no money shall be otherwise paid than upon such warrants so drawn, and each warrant shall specify the amount levied and appropriated to the fund upon which it is drawn, and the amount already expended upon such fund. Comp. Statutes, Ch. 14, Art. 1, Sec. 66. The money could not have been drawn from the treasury, therefore, without the joint act of the mayor and clerk of the city. The conduct of Mr. Boggs, as shown by testimony in the record, is inexcusable. As chairman of the finance committee he was entrusted with the examination of the title to this land, and was authorized so far as the city council could authorize him, to purchase the land if he found the title perfect. He made verbal report to the defendants Farr and Lantry, that the title was good, and induced them to issue the order in question, and afterwards reported to the city council that the title was defective, whereupon the council repudiated the purchase. Had the city in any manner ratified this contract after

full notice of its terms and conditions, it would be estopped from alleging its illegality; but no act of ratification has been shown.

The petition as to the Weimers wholly fails to state a cause of action. So far as it appears they acted in the utmost good faith. The order was not drawn in their favor, nor did they draw any money from the treasury of the city of Blair; and if the defendants purchased without authority, the contract would seem to be sufficient to bind them personally. Mr. Lantry was not acting in an official capacity. Suppose he had purchased chattels in place of real estate, and the city had disclaimed authority, it will not be contended that he could compel the seller to take the property again and refund the money? The same rule would seem to apply in this case. The court erred, therefore, in overruling the demurrer as to Weimers.

In view of the fact that this order was drawn under a mistake as to the law, and there is no proof that the funds in question were drawing interest, therefore no interest will be allowed. The judgment of the district court as to Weimers will be reversed, and the action as to them dismissed. The judgment dismissing the action as to Farr is reversed, and judgment will be entered in this court against Farr and Lantry for the sum of $716.66, to be paid within ninety days, provided the city within that time shall execute and deliver to them a good and sufficient deed conveying to them the title of the city to the land in question.

JUDGMENT ACCORDINGLY.

THE other judges concur.