W. L. STICKEL LUMBER COMPANY, APPELLEE, v. CITY OF KEARNEY ET AL., APPELLANTS.

FILED JULY 2, 1919. No. 20424.

Municipal Corporations: CONTRACTS: IRREGULARITIES. Where a city has the power to enter into a contract, but the manner of the exercise of the power is irregular or defective, and the city purchases, uses and still retains property purchased under such irregular proceedings, no element of fraud or lack of consideration

being shown, the allowance of the claim by the city council will not be set aside at the suit of a taxpayer.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*H. M. Sinclair* and *Fred A. Nye,* for appellants.

*Warren Pratt, contra.*

LETTON, J.

Judgment for $1,248.47 was rendered against the city of Kearney for the value of certain iron pipe purchased from plaintiff and used in the streets. An intervening taxpayer appeals.

A petition was presented to the city council asking that storm sewers be constructed on certain streets. The petition was granted, and plans and specifications were adopted by the council for the sewer system. A special election was called for the submission to the electors of a proposition to vote $50,000 bonds, the proceeds of which were to be used to pay the cost of the same.

Prior to the time that the election was held it was desired to pave a portion of the streets in which the proposed storm sewers were to be placed. In anticipation of a favorable result of the election, and in order to avoid the cost of removing and replacing the pavement, the city engineer purchased the pipe, and procured the same to be laid under three intersections of streets to be crossed by the sewer. The pipes were laid as part of the proposed storm sewer system and intakes were placed in the gutters to connect with them.

At the election the proposition to vote bonds was defeated. No further steps were taken to construct the system. The ends of the pipes were closed with bulkheads of lumber, and the intakes were left open, forming an inverted syphon, so that water flowing in the gutters in the usual course entered on one side of the street, passed through the pipe, and flowed out through the other intake into the gutter on the lower side, thus avoiding the use of surface gutters across the intersec-

tions.   The statutes requiring estimates and competitive bids before such a purchase were not complied with. A bill was allowed by the city council for the pipe, and a warrant ordered to be drawn, when an appeal was taken to the district court by an intervening taxpayer.

It seems to be established by the evidence that, when material was needed for ordinary street improvements, the city engineer was authorized by the council to purchase the same.   For the defense, several witnesses testified that after rains the water would stand in the pipes and would give off offensive odors; that the result of the paving and the installing of the pipes is that the drainage is worse than before, and the city health officer testified that it was dangerous to the public health to leave the pipes in their present condition.

The council of a city of the second class having over 5,000 inhabitants cannot lawfully incur expenses or enter into a contract therefor of this nature and extent unless money has been previously appropriated for that purpose, or the expenditures previously sanctioned by a majority of the electors of the city.   *City of Kearney v. Downing,* 59 Neb. 549; *Fulton v. City of Lincoln,* 9 Neb. 358; *City of Blair v. Lantry,* 21 Neb. 247; *City of Plattsmouth v. Murphy,* 74 Neb. 749.

But even though the statutory requirements as to the making of a contract have not been carried out, if the city authorities are vested with general authority to do the act for the performance of which the materials are supplied, and there are no elements of other than fair dealing shown, and the city elects to keep the property, there may still be a recovery for the reasonable value of the same.

The crucial question is: Did the city have power to purchase the pipe for the purpose for which it was used: ''If it had the power, but the manner of its exercise was irregular or defective, and the city accepts, makes no offer to return, and still retains property obtained by virtue of the irregular proceedings, it is bound, both

morally and legally, to pay the reasonable value thereof, not under the void contract, but by way of compensation." *Nebraska Telephone Co. v. City of Red Cloud,* 94 Neb. 6.

The city, under section 4951, Rev. St. 1913, had power to install a sewer and drainage system, and therefore had power to purchase material for the purpose. Though the statute required a petition to be signed by abutting property owners, and the cost to be eventually paid by them, this did not make the purchase *ultra vires.*

"Properly speaking, *ultra vires* contracts of a municipal corporation are such as the corporation has no power to make under any circumstances or for any purpose. A contract of a municipal corporation is *ultra vires* in its proper sense when it has no power under the existing legislation under any circumstances to enter into such contract. Such a contract, of course, is wholly void and gives rise to no rights. The objection to such a contract is not merely that the corporation should not have made it, but that it had no power to make it. But, in the case at bar, by the statute then existing the mayor and council were given the power to change the grade of the street and to award contracts for perfecting such change. Where the municipal corporation has the power to make the contract, but fails to follow the procedure laid down by the law for making of the contract, it cannot properly be said to be *ultra vires* and void, but is merely irregular." *Rogers v. City of Omaha,* 80 Neb. 591.

In the case at bar the mayor and council had power to provide a sewer system, and also have power to gutter and otherwise improve the streets. The pipes were not a success as gutters, but this was not the fault of the plaintiff. The city, through its officers, purchased the pipe, it is still using it, and may use it to a greater degree in the future if the sewer system approved by the council is ever installed. The case falls within the principle of *Grand Island Gas Co. v. West,* 28 Neb. 852; *Lin-*

*coln Land Co. v. Village of Grant,* 57 Neb. 70; *Rogers v. City of Omaha,* 76 Neb. 187, 80 Neb. 591; *Nebraska Bitulithic Co. v. City of Omaha,* 84 Neb. 375, and *Nebraska Telephone Co. v. City of Red Cloud,* 94 Neb. 6.

AFFIRMED.

ROSE, J., dissents.

CORNISH and ALDRICH, JJ., not sitting.

·The following opinion on motion for rehearing was filed September 27, 1919. *Rehearing denied.*

PER CURIAM.

A motion for rehearing has been filed, pointing out that under section 4951, Rev. St. 1913, the sewer system provided for therein could only be constructed "without cost to the city." The reference to this section in the opinion is erroneous. But the power to gutter and otherwise improve the streets is given by sections 4816, 4908, and power to construct a system of sewerage and to borrow money for that purpose, pledging the credit of the city, is conferred by section 4956. It was under the latter section that the proceedings of the city of Kearney were conducted.

The motion for rehearing is

OVERRULED.