## CENTRAL POWER CO. v. CENTRAL CITY, NEB.

(Circuit Court of Appeals, Eighth Circuit. July 11, 1922.)

No. 5885.

Municipal corporations ☞247—Power company, which recognize validity of contract with city until after enactment empowering city to make contracts, held estopped from claiming contract invalid.

Where city, in reliance on contracts with power company to furnish it with electricity at specified rates, dismantled its own power plant, and the company recognized the validity of the contract by furnishing electricity thereunder for more than five years, and until after the enactment of a statute empowering the city to enter into such a contract, the company subsequently thereto was estopped from claiming that the contract was void because ultra vires at the time it was entered into.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Suit by the City of Central City, Neb., against the Central Power Company. Decree for plaintiff, and defendant appeals. Affirmed.

Ralph D. Stevenson, of Chicago, Ill. (George A. Lee, of Omaha, Neb., on the brief), for appellant.

Walter R. Raecke and John C. Martin, both of Central City, Neb., for appellee.

Before SANBORN and STONE, Circuit Judges.

STONE, Circuit Judge. June 3, 1915, the city of Central City, Neb., and the Grand Island Electric Company executed a contract whereby the company agreed to furnish the city electric current at certain specified rates; and the city agreed to take and pay for all of such current required for "municipal use and resale purposes." The contract was for a term of 10 years, with an option in the city, on giving notice, to extend the same for 10 years more. The Central Power Company, appellant, succeeded to all the rights, liabilities, and obligations, under the contract, of the Grand Island Electric Company. The parties operated under this contract until October 1, 1920, when the appellant notified the city that it would charge a higher than contract rate for current furnished after that date. By that date, the city (which, at the time of making the contract, was operating a plant to furnish electric light and power to its inhabitants and for municipal purposes), had dismantled its own power plant and was dependent upon the appellant for current used by it and its inhabitants. October 29, 1920, this bill was filed by the city to compel specific performance of the above contract. From a decree awarding such specific performance and enjoining higher than contract rates during the contract term this appeal is brought.

The sole contention here is lack of power in the city to make the above contract. The argument is based on the theories following:

(1) That there is no express statutory authority; (2) that there is no implied statutory authority; (3) that if the power exists, it was not and could not be exercised as required by the statutes; (4) that express statutory authority to purchase current existed only as to usage for municipal purposes, and, as to such, was limited to five years; (5) that the contract is indivisible, and, being void because for a longer term than five years for municipal purposes, is void entirely.

In addition to affirming the power of the city to make the contract at the time it was executed, the city pleaded estoppel. The estoppel is based upon the claims that to annul the contract would result in dangerous damage to the city and its inhabitants because it would deprive them for a year or more of any medium for lighting purposes and of power with which to operate the water system and maintain fire protection; that in 1919 the Legislature had passed an act (Laws Neb. 1919, c. 49) expressly granting such contracting power to the city and that the parties had continued to recognize the contract and operate under it for more than a year after the passage of the 1919

act. A logical consideration of the issues on this appeal requires that this issue of estoppel be first examined and determined.

Upon the stipulated facts, there can be no question that the city would be in a most deplorable situation if it could not obtain this current. The health, property and lives of its inhabitants would be seriously endangered. This position is not affected by the statement that no unwillingness to furnish current at higher rates has been manifested by the company. The legal right of the city to compel such service rests, so far as this action is concerned, upon the contract and upon that alone. Such a situation should be avoided if legally possible so to do. The only reason urged why this cannot be done is that the contract is ultra vires the city. Such a reason will not be permitted where it will clearly result in injustice and injury.

Conceding, but not deciding, that the city had no power to make the contract at the time it was made, there can be no doubt but that it did have such power under and after the act of 1919. The parties fully recognized and acted under the contract for more than a year after that act became effective and such recognition and action is sufficient to estop the company from now claiming lack of power. Omaha Gas Co. v. Omaha (D. C.) 249 Fed. 350; City Railway Co. v. Citizens St. Railroad Co., 166 U. S. 557, 569, 17 Sup. Ct. 653, 41 L. Ed. 1114. Also see The Bankers Trust Co. v. City of Raton, 258 U. S. ——, 42 Sup. Ct. 340, 66 L. Ed. ——, decided by Supreme Court April 10, 1922. Nor will it avail the company to contend that the 1919 act required adoption of such contracts in a particular form, namely, by popular vote. This contract was an exercise of the proprietary or private business powers of the city rather than a governmental power and where dire injury would, as here, result from sustaining a plea of ultra vires, the form of exercising a given power of this character will not be permitted to work injustice. Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L. R. A. (N. S.) 793, 120 Am. St. Rep. 621.

The estoppel pleaded is established, and the decree should be and is affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes