Village of Davenport v. Meyer Hydro-Electric Power Co.

---

VILLAGE OF DAVENPORT, APPELLEE, v. MEYER HYDRO-ELECTRIC POWER COMPANY, APPELLANT.

FILED MAY 15, 1923. No. 22368.

1. **Electricity**: FRANCHISE: ESTOPPEL. Ordinance 48, with the acceptance thereof, constituted the franchise contract under which the parties to this controversy operated. And where, as in this instance, the village had the power to contract for electric current for 25 years, following the legislation of the year 1919 (Laws 1919, ch. 49), and the parties continued, after this legislation, to operate under such contract, and where to have cut off the current would have worked an irreparable injury to the inhabitants of the village and caused injustice and a legal wrong, the company was estopped to claim the village acted *ultra vires* at the time it entered into the contract in 1915.

2. ———: ———: RATES: EVIDENCE. In this action the question of rates was not involved, and the trial court ruled correctly in excluding all testimony on this subject, as the right of the village to compel the service rested upon the contract only.

APPEAL from the district court for Nuckolls county: LEONARD W. COLBY, JUDGE. *Affirmed.*

*Buck & Brubaker* and *George A. Lee,* for appellant.

*M. S. Gray* and *Charles H. Sloan, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN and DAY, JJ., BUTTON, District Judge.

BUTTON, District Judge.

In the year 1915 the village of Davenport, Nebraska, and Ernest Meyer entered into a contract, whereby Meyer agreed to furnish electric current to the village at rates specified in the contract, and the village agreed to accept such current and pay therefor. To this end ordinance No. 48 was passed, whereby a contract was tendered Meyer for a term of 25 years. This ordinance fixed a minimum and maximum rate, and provided for current for Meyer for milling purposes, and contained many provisions unnecessary to recite herein. This tender was accepted by Meyer, in what is termed a contract, of date May 21, 1915. This ordinance, contract and written acceptance, constituting one contract, was consummated by the parties by Meyer bringing into the village the current and the village receiving the same and paying therefor. All went well for the five years mentioned in the written acceptance and for more than one year thereafter. The Meyer Hydro-Electric Power Company, of which Meyer was president, was the real party in interest, and, after furnishing the service for six years, claimed it could no longer furnish current at contract rates, as they were no longer compensatory, and had. in fact, become confiscatory, on account of changed conditions, and the company threatened to discontinue the service unless the village would pay a higher rate. This the village refused to do, and began injunction proceedings, which resulted favorably to appellee, and appellant has appealed to this court.

Ordinance No. 48, conveying the franchise, and the acceptance thereof, was the contract. *Vicksburg v. Vicksburg Water-Works Co.,* 206 U. S. 496; McQuillen, Municipal Ordinances, sec. 565.

Appellant claimed this contract was *ultra vires* on the part of the village and void. Appellee met this conten-

tion with a plea of estoppel. We will dispose of this question of estoppel first, for, if it be sustained, many other questions are eliminated.

The village stood upon its contract and sought its enforcement. The Meyer Hydro-Electric Power Company also wished to stand upon its contract, but desired to prevent the village from doing so, because, as it asserted, under the law as existing in 1915, the village had no express or implied power to enter into such contract. The company did not offer to surrender its franchise and repudiate the contract which it claimed was void; rather, the company insisted upon its contract, said to the village, in effect: "We had a contract with you but, on account of changed conditions you must now pay a higher rate than provided therein, and if you do not do it we will shut off your current until you do. In the meantime, we shall retain our franchise, we shall maintain our lines, we shall continue the right to furnish the current to ourselves. You have always paid us for the current in the past, and we intend you shall do so in the future at a higher rate, and, in short, we intend to stand upon, and insist upon, our contract; but you must pay a rate which will be compensatory and not confiscatory as we claim the present rate is."

The Meyer Hydro-Electric Power Company asked for a 10-year contract and got a 25-year contract. A letter, of the date January 13, 1921, contains a threat to cut off the service, and also the following language, to wit: "We have gone to considerable expense installing another power unit in view of improving our service, and hope to have same in operation soon. I think you gentlemen will agree with us that no business will continue very long if not maintained on a paying basis. Therefore we are asking for a small increase in rates, as we would like to continue in business. Hoping you gentlemen may see fit to reconsider our proposition, we remain, Meyer Hydro-Electric Pwr. Co." It seems clear, therefore,

the company wished to stand upon its contract, but desired a higher and compensatory rate.

The company asserts in its brief "that an illegal and void contract cannot be made the groundwork of an estoppel," and cites a long line of authorities to support this contention. We have no quarrel with these decisions in a proper case; but it is equally elementary that one cannot stand upon and ask performance of a contract and at the same time declare the contract illegal and void. The company is estopped to assert the invalidity of this contract.

We believe the company is estopped to claim the village acted *ultra vires.* To cut off the service from the village now would work an irreparable injury to its inhabitants, endanger life, and property, and health. It is altogether possible that the village acted irregularly in entering into this contract for 25 years in the year 1915. But since the legislation of 1919 (Laws 1919, ch. 49) the village does have the power to operate under such a contract. Both parties to the contract have recognized this fact by acting under it. And, as stated in *Central Power Co. v. Central City,* 282 Fed. 998: "Nor will it avail the company to contend that the 1919 act required adoption of such contracts in a particular form, namely, by popular vote. This contract was an exercise of the proprietary or private business powers of the city, rather than a governmental power, and where dire injury would, as here, result from sustaining a plea of *ultra vires,* the form of exercising a given power of this character will not be permitted to work injustice. *Bell v. Kirkland,* 102 Minn. 213, 13 L. R. A. n. s. 793, 120 Am. St. Rep. 621."

The village probably had the power to enter into a contract like the one involved, but for 5 years instead of 25 years. If the village had the power to contract for electric current, mere irregularities, such as making it for 25 years and without proper appropriations, did not take away the power. And what was more, appellant had always received its pay for the service.

If this contract had been entered into since the legislation of 1919, exactly as it was in 1915, but without submission to a vote, and the parties had acted under it, this would be a mere irregularity, and would not have taken away the power of the village and made possible the defense of *ultra vires*. *Stickel Lumber Co. v. City of Kearney*, 103 Neb. 636; *Rogers v. City of Omaha*, 80 Neb. 591.

Both parties having ratified and acted under the contract of 1915, since the legislation of 1919, had recognized the power of the village to operate under such a contract, even if the village had not the power previous to 1919, which is not conceded, and the doctrine of estoppel was available to the village as a defense. And, further, we do not believe the doctrine of *ultra vires* was available where it would have defeated the ends of justice and worked a legal wrong as in this case. *Ohio & M. R. Co. v. McCarthy*, 96 U. S. 258; *In re Waterloo Organ Co.*, 134 Fed. 341; *Red Cross Protective Society v. Wayte*, 171 Fed. 643; *Central Power Co. v. Central City*, 282 Fed. 998.

There was in the answer a plea that the contract rates, on account of changed conditions, were no longer compensatory, and, in fact, had become confiscatory, and appellant's property about to be taken without due process of law, and its private property about to be taken for public use without just compensation; and evidence was offered tending to sustain this contention and was rejected by the court. This action of the trial court is now assigned as error.

The court had nothing to do with rates and was correct in sustaining objections to this line of evidence. On account of mutuality of interest, if the company were permitted to escape from its contract because rates were not compensatory, then, applying the same logic, the village could have defeated the contract if it could have shown the rates in excess of compensatory. In the last analysis there could be no such thing as a contract. Men

have made bad contracts and have been ruined financially; but this is no reason for abrogating contracts. Corporations sometimes do likewise, but their contracts must be held inviolate. The right of the village, in this action, to compel the service rested on the contract, and only on the contract.

The judgment of the trial court is right, and is

AFFIRMED.