A. V. SORENSEN, APPELLANT, V. CHIMNEY ROCK PUBLIC POWER DISTRICT, APPELLEE.

293 N. W. 121

FILED JUNE 28, 1940.   No. 30793.

*Clarence A. Davis, Daniel Stubbs* and *James N. Ackerman,* for appellant.

*C. A. Sorensen, contra.*

Heard before ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

EBERLY, J.

This, an action at law, was commenced by plaintiff, A. V. Sorensen, doing business as the Midwest Electric Supply Company, to recover of defendant, Chimney Rock Public Power District, the sum of $2,950.62, with interest, as a balance due for a quantity of merchandise and electrical equipment alleged to have been sold at wholesale and delivered by plaintiff to defendant, and by defendant accepted, received and retained. This claim is set forth in plaintiff's petition in seventeen distinct and separate causes of action, in each of which it is alleged that on a date therein named plaintiff sold and delivered to defendant merchandise and electrical equipment therein specified, of the fair and reasonable value therein set forth, which defendant accepted and received, and since retains. Further, it is alleged that no part of the total amount due upon the seventeen causes of action has been paid, except the sum of $720 in cash, and $478.71 by return of merchandise. Plaintiff alleges that after deducting said total payments, including value of merchandise returned, there remains due to plaintiff from defendant the sum of $2,950.62.

In its answer defendant denies generally the allegations of the petition, and specially denied that the property in controversy was ever "ordered, requested, purchased, received or accepted" by it, and that the purchase of no part thereof was ever authorized by its board of directors, or within the scope of the actual or apparent authority of any officer or employee of the corporation to make; that the alleged purchase of such property, set forth in plaintiff's

petition, was beyond and in excess of the corporate powers of defendant and *ultra vires*. To this answer plaintiff filed its general denial. There was a trial to the court, a jury having been waived, and judgment was entered for defendant. Plaintiff appeals.

Plaintiff is a wholesale dealer in electrical equipment, and defendant is a rural power district, which is incorporated and doing business under the provisions of chapter 86, Laws 1933, as amended by chapter 152, Laws 1937 (Comp. St. Supp. 1937, secs. 70-701 *et seq.*). A "public power district" is defined in this act as: "1. 'Public power district,' * * * means a district organized under this act either as originally organized or as the same may from time to time be altered or extended." Comp. St. Supp. 1937, sec. 70-701. "A district may be created as hereinafter provided in this act and when so created shall be a public corporation and political subdivision of this state, and may sue or be sued in its corporate name." Comp. St. Supp. 1937, sec. 70-702.

Its functions and powers are thus, in part, defined by the terms of its constating act, viz.: It "shall have the following powers and shall be entitled to own, have, or exercise the following rights, privileges and franchises, subject to the limitations, if any, of the petition for its creation and all amendments thereto: (1) Such a district shall have all the usual powers of a corporation for public purposes and may purchase, hold, sell, and lease personal property and real estate reasonably necessary for the conduct of its business. (2) Such a district may own, construct, reconstruct, purchase, lease, or otherwise acquire, improve, extend, manage, use, or operate any electric light and power plants, lines and systems, either within or beyond, or partly within and partly beyond the boundaries of the district, and may engage in or transact business or enter into any kind of contract or arrangement with any person, firm, corporation, * * * or with any body politic or corporate, for any of the purposes above mentioned or for or incident to the exercise of any one or more of the foregoing powers, or for the generation, distribution, transmission, sale, or purchase of

electrical energy for lighting, power, heating and any and every other useful purpose whatsoever, and for any and every service involving, employing or in any manner pertaining to the use of electrical energy, by whatever means generated or distributed, or for the financing or payment of the cost and expense incident to the acquisition or operation of any such power plant or system, or incident to any obligation or indebtedness entered into or incurred by the district." Comp. St. Supp. 1937, sec. 70-706.

In this connection, the articles of defendant corporation expressly provide that it "will receive its principal income from the sale of electrical energy."

The defendant is largely engaged in rural electrification. A careful reading of the record and the evidence contained in the bill of exceptions discloses that, eliminating the formalities of pleading, defendant's real contention is that the various items of merchandise, for the furnishing of which appellant seeks to recover, constitute wiring supplies and equipment suitable for wiring farm premises and for connecting up the wiring and electrical equipment on such premises with the electric light and power distribution system of appellee district. It is also appellee's claim that at its own expense it only constructed its transmission line to each of its farmer customers to and including the meter, and all wiring and equipment beyond the meter, necessary to hook up the transmission line with the farmer, with exception of some cases of a light, was to be installed and paid for by the latter. There is no real contest, as disclosed by the testimony, as to the quantity, quality, and reasonable value of the property in suit, and as to the suitability and absolute necessity thereof for the intended use in connection with hooking up defendant's system with its customers.

A careful examination of the petition for the formation of defendant district discloses that its terms in no manner materially restrict the powers delegated to it by the terms of the quoted statute.

The terms of the statute are broad and inclusive. Not only is defendant empowered to construct, acquire, improve,

use and operate (electrical) lines and systems, but it is expressly authorized to enter into any contract incident to the exercise of the enumerated powers and expressly for the transmission or sale of electrical energy. To connect up defendant's system with its customers is not only a necessary incident, but on that act is dependent the realization of the income which the investment must produce. It constitutes an essential part of defendant's main undertaking. It is clearly embraced in the legislative intent evidenced by this statute.

The general rule, even when corporate powers and privileges are strictly construed, is: "Corporations may transact, in addition to their main undertaking, all such subordinate and connected matters as are, if not essential, at least very convenient to the due prosecution of the former." Brice, Ultra Vires (2d ed.) ch. 3, sec. 2, p. 86.

The act of connecting defendant's transmission lines with its customers' appliances is not only essential and fairly incidental to the powers with which it is vested, but the entire success of its corporate business is dependent upon it. Therefore, the defense of *ultra vires* made by defendant must be denied. *Malone v. Lancaster Gas Light & Fuel Co.*, 182 Pa. St. 309, 37 Atl. 932; *Commonwealth v. Philadelphia Electric Co.*, 300 Pa. St. 577, 151 Atl. 344.

This conclusion is in turn supported by the general principle, often announced, that, when a state, by itself or through its corporate creations, embarks in an enterprise, especially when commercial in character or which is usually carried on by individuals or private companies, its sovereign character is ordinarily waived, and it is subject to like regulations with persons engaged in the same calling. *Western & Atlantic Railroad v. Carlton*, 28 Ga. 180; *Amstein v. Gardner*, 134 Mass. 4; *United States v. Warren Transportation Co.*, 7 Fed. (2d) 161; *Georgia v. City of Chattanooga*, 264 U. S. 472, 44 S. Ct. 369; *Farnell v. Bowman*, 12 A. C. (Eng.) 643, 649; *Sydney Harbour Trust Commissioners v. Ryan*, 13 C. L. R. 358; *Federal Sugar Refining Co. v. United States Sugar Equalization Board*, 268 Fed. 575. See, also,

*Nelson-Johnston & Doudna v. Metropolitan Utilities District*, 137 Neb. 871, 291 N. W. 558.

It follows that, the transactions upon which plaintiff relies for recovery being clearly within the powers with which defendant is endowed by the terms of its constating act, the question remaining is, has there been an exercise of such powers to the extent necessary to impose liability upon the defendant power district?

It appears without question that on April 27, 1937, the lawful board of directors of the Chimney Rock Public Power District, in a lawful meeting held, selected C. B. Turner as their "temporary project manager," fixed his salary, placed him in immediate charge of their business, and, in addition, particularly conferred upon him special authority, in the following terms:

"3. That C. B. Turner, as such temporary manager, shall act as the District's representative in all relations with the Rural Electrification Administration, except in a legal and engineering nature, that he shall among other things assist customers with the wiring of their premises and installations of electric and plumbing equipment and do all of the things that may be helpful in building up load and getting the proposed electric light and power system of the district constructed as speedily and efficiently as possible."

The authority necessarily implied by the appointment of a manager has been recognized by this court. *Howe v. Provident Loan & Investment Co.*, 130 Neb. 469, 265 N. W. 255; *Bliss v. Falke*, 125 Neb. 400, 250 N. W. 250; *Johnston v. Milwaukee & Wyoming Investment Co.*, 46 Neb. 480, 64 N. W. 1100; 3 Thompson, Corporations (3d ed.) secs. 1690, 1691, 1696.

At this time this board made their manager, Turner, *ex officio* a member of their executive committee. It also appears that under this appointment C. B. Turner continued to occupy the office of manager of this corporation and to discharge the duties of that position until February 11, 1938. It also appears that, while occupying the position of manager of defendant corporation and while the special

authority above referred to remained in full force and effect, C. B. Turner, in behalf of defendant, ordered and purchased the electrical equipment and merchandise set forth in the seventeen causes of action contained in plaintiff's petition; that plaintiff in good faith accepted such orders and sold the electrical equipment to defendant, and shipped the same to Chimney Rock Public Power District, as consignee, to destinations as directed by Turner, the representative of defendant. At the end of this transportation, each shipment of property was by the carrier conveying the same delivered to, and as directed by, C. B. Turner who, as manager of defendant, accepted and received the same. He immediately carried such electrical equipment and merchandise into what plaintiff's witnesses called defendant's warehouse or defendant's storehouse at Bayard, Nebraska. This building was a shed adjoining and attached to defendant's office, in which the manager performed his duties, and in which the keys of defendant's warehouse were kept, under the manager's control. From this stock of electrical equipment and merchandise, under the general direction of the manager, were taken necessary equipment to complete the necessary connections of the customers of the power district to their premises, the electrical fixtures therein, and the wiring of the same. There is no question as to the delivery and storage of this property. Witness Burnham, who is a director and treasurer of defendant district, as well as acting manager, testifying for defendant, says that he had "seen some of this material in the warehouse there;" and the undisputed evidence is that some of the board of directors even issued some of this material out for use.

The total amount of property, thus purchased and delivered, aggregated $4,149.43. Payments made and certain items of property returned reduced the amount due, at the time of the institution of suit, to $2,950.62. Since the time this action was begun, $599.66 had been paid, there then remaining due, according to plaintiff's brief, the sum of $2,350.96. Electrical equipment and merchandise representing this amount were delivered to and received by defend-

ant, but not paid for. None of it has ever been tendered back by defendant. Defendant's exemption from liability is substantially based on the proposition that all corporate powers of its public power district are vested in and can only be exercised by its board of directors; that the officers of a public power district are agents of the state; and that the requirements of law as to entering into contracts for purchase were not complied with. Conceding, *arguendo* only, the claims thus made, still the facts undisputed in the record bring the case clearly within the principle that a district is liable for the reasonable value of electrical equipment which it purchases and retains, provided such district was clothed with power to purchase such property, notwithstanding the fact that the contract is unenforceable because the power was irregularly exercised. *Western Chemical Co. v. Board of County Commissioners,* 130 Neb. 550, 264 N. W. 699; *Omaha Road Equipment Co. v. Thurston County,* 122 Neb. 35, 238 N. W. 919; *Stickel Lumber Co. v. City of Kearney,* 103 Neb. 636, 173 N. W. 595; *Simmons v. Farmers Union Cooperative Ass'n,* 114 Neb. 463, 208 N. W. 144.

Defendant's authorized manager, in its behalf, purchased, received, and retained property suitable for its use in the exercise of its statutory powers, in transactions none of which were *ultra vires*. The property in suit, defendant has either used in promoting its legitimate business, or still retains, and has never tendered back. The value of such property is, in effect, conceded.

We, therefore, conclude that the trial court erred in its denial of a recovery. The judgment of the district court is reversed, and the cause remanded, with directions to enter judgment as prayed.

REVERSED.