FREMONT NATIONAL BANK, APPELLANT, v. FERGUSON & COMPANY, APPELLEE.

FILED JUNE 1, 1934. No. 28945.

*Abbott, Dunlap & Corbett,* for appellant.

*Hall, Cline & Williams, contra.*

Heard before GOSS, C. J., ROSE, GOOD, DAY and PAINE, JJ., and REDICK, District Judge.

REDICK, District Judge.

This is an action by plaintiff upon a promissory note for $5,000, executed by defendant Ferguson & Company, a corporation. The defense is that the execution of the note was *ultra vires* the defendant corporation. Plaintiff replied, denying that the note was *ultra vires,* and entering a plea of estoppel. A jury was waived and trial had to the court, resulting in a finding and judgment for the defendant, and the plaintiff appeals.

The note in suit, dated April 14, 1931, due in one year, was the final renewal in a series of notes beginning in

October, 1923, at which time W. R. Adams and W. R. Adams Company, a corporation, were indebted to plaintiff in the sum of $10,000 for money borrowed, and plaintiff demanded either a reduction or security; whereupon the note was renewed with William H. Ferguson as indorser, and was thereafter renewed every six months in the same manner until April, 1927. In 1926, William H. Ferguson was the owner of large interests in various corporations, farms and dairy farms, and for the more convenient operation of his business on June 8 of that year, formed the corporation defendant, and turned over the greater portion of his property, valued at over a million dollars, to such corporation, receiving in return the entire issue of 10,000 shares of stock, par value $100 each, and thereafter made a present of 1,000 shares each to his wife and two sons, Robert L. and Richard, and one share to Hoyt R. Hawke, the bookkeeper, to qualify him as a member of the board, and retained 6,999 shares. It was a family corporation, and from the beginning William H. Ferguson was president, Robert L., vice-president and treasurer, and Hawke, secretary, who also comprised the board of directors, except for the years 1929 and 1930 Mrs. Ferguson and Richard were elected as additional directors. In April, 1927, when the last note indorsed by William H. Ferguson came due, he was in California, and a renewal note was presented to the plaintiff bank by the Adams Company indorsed by defendant Ferguson & Company, by Robert L. Ferguson, vice-president. This note was accepted by the bank, and the note of which it was a renewal and upon which William H. Ferguson was indorser was taken up and canceled. Renewals of this note indorsed by Ferguson & Company, by William H., president, or Robert L., vice-president, were executed every six months until April 14, 1931, the note in suit for $5,000 (the indebtedness having been reduced to that amount) was executed by Ferguson & Company (maker) by Robert L. Ferguson, vice-president. All previous notes were taken up and canceled.

At the time of the organization of Ferguson & Company as a corporation, it took over and assumed to pay the liabilities of William H. Ferguson in the sum of about $830,000, a list of which claims appears in the record, but it does not contain the liability of Ferguson as indorser on the Adams Company note.

In April, 1927, when Ferguson & Company executed the first renewal note and procured the release of William H. Ferguson as indorser, the latter was indebted to the company for over $24,000, and at the dates of the subsequent renewal notes upon which Ferguson & Company was indorser, William H. Ferguson was indebted to the company in sums varying from about $60,000 to $17,000 when the note in suit was executed. At the dates of the last four renewal notes, from October, 1929, to April, 1931, W. R. Adams Company was indebted to Ferguson & Company in sums varying from $13,000 in October, 1929, and gradually increasing to over $37,000 in April, 1931. In addition, W. R. Adams was personally indebted to Ferguson & Company in about $2,600. The Adams Company was engaged in the fur and hide business in Fremont and had no business connection with Ferguson & Company except in respect of the indebtedness above stated; the nature of the transactions between the Adams Company and Ferguson & Company resulting in the indebtedness is not disclosed by the evidence. Mrs. Adams was the niece of William H. Ferguson.

There is some slight conflict in the evidence upon the point, but the great weight thereof establishes the fact that the first notice plaintiff had that the defendant claimed that the various notes in question were *ultra vires* was after the commencement of the present suit; in fact, as late as April 26, 1932, Mr. Robert L. Ferguson, as vice-president, wrote the plaintiff requesting a further renewal and suggesting a scheme of partial payments, and in the letter made no reference to the defense of *ultra vires*.

The general nature of the business to be transacted by

Ferguson & Company, as stated in its charter, was to operate farms, deal in grain and other agricultural products and their derivatives, deal in poultry, milk, cream and other dairy products, to manufacture brick, and deal in goods, wares, merchandise and commodities of every class and description, to deal in real and personal property of every kind, and stocks, shares, bonds or other evidences of indebtedness of any corporation, "to lend money belonging to the company; to buy, sell, and negotiate, either on its own account or for other persons, individuals and corporations, loans, investment securities and evidences of indebtedness of all kinds and nature, including notes, trade acceptances, mortgages, bailments, bonds, debentures and warrants," etc., and as a final description of its powers, the following: "Without in any particular limiting any of the objects or purposes or powers of the company, it is hereby expressly declared and provided that the company shall have power to do all acts or things necessary, incidental or convenient to do, or calculated, directly or indirectly, to promote the interests of the company, or enhance the value or render profitable any of its property or rights; and in carrying on its business, or for the purpose of obtaining or furthering any of its objects, to do any and all acts and things and to exercise any and all other powers which a natural person could do and exercise and which now or hereafter may be authorized by law."

Upon the above statement of facts, as disclosed by the record, two questions are presented: (1) Was the execution of the note *ultra vires?* (2) Is the defendant estopped from making this defense?

1. We think it appropriate, in approaching the discussion of the first question, to call attention to some well-established principles of corporation law. A corporation, while a separate entity, is a mere creature of the law, and possesses only those powers which are expressly granted to it by its charter, and such other powers as are necessary, appropriate or convenient for the full

exercise of such express powers, in the prosecution of the business and purposes of the corporation. These latter are termed implied or incidental powers and their exercise is justified when the objects and business of the corporation will thereby be promoted, in the judgment of the managing officers. Contracts of a corporation not within its express or implied powers are *ultra vires*. One dealing with a corporation whose articles are duly recorded is bound to take notice of the extent of its powers and the limitations of the law with reference thereto; and if the contract sought to be enforced is apparently one beyond the power of the corporation to make, the burden is upon the one seeking its enforcement to prove its validity; on the other hand, if the contract may or may not be within the powers of the corporation, it is incumbent upon the latter to establish facts negativing such power.

A concise statement of the plaintiff's case is this: The Adams Company was indebted to plaintiff on a promissory note which became due, and plaintiff refused renewal unless security was given; thereupon William H. Ferguson indorsed the renewal note and a number of others, the last of which became due April 20, 1927. Shortly prior to this date Ferguson organized the defendant corporation, which took over his many business interests and assumed his large personal indebtedness connected therewith, of which, however, his liability as indorser to plaintiff was not one. He transferred nearly all of his property and assets to the corporation, and received the entire issue of its stock, which he divided with members of his immediate family. April 20, 1927, William H. Ferguson was in California, and the note heretofore mentioned was renewed with the defendant corporation as indorser. On that date William H. Ferguson was indebted to the corporation in the sum of $24,000. The Adams Company and the defendant had no business connection or common interests; in fact, the Adams Company was engaged in the fur and hide business, one of the few

businesses not expressly authorized by the charter of the Ferguson company, and one which it had not undertaken to pursue. The note of April 20, 1927, was renewed every six months by the Adams Company and indorsed by the Ferguson company until April 14, 1931, when it was renewed or taken up by the note in suit signed by Ferguson & Company, by Robert L. Ferguson, vice-president. In October, 1929, the Adams Company was indebted to the Ferguson company in the sum of $13,000; April, 1930, $15,000; October, 1930, $21,514.12, and April, 1931, $37,-514.12, said dates being those of the renewals indorsed by the Ferguson company, except that of April, 1931.

The precise question then for our determination is whether or not the fact of the indebtedness of William H. Ferguson at the time of the first indorsement or the indebtedness of the Adams Company at the time the note in suit was given, or both, furnished a sufficient foundation upon which to rest the exercise of the implied or incidental powers of the defendant corporation in the prosecution of its business. The plaintiff contends that, by reason of the indebtedness referred to, the defendant corporation had such an interest in the Adams Company and its continued commercial existence that it was justified in lending its credit to the Adams Company for the purpose of improving its position as a creditor and bettering its chances of finally collecting its debt. On the other hand, the defendant contends that the various indorsements and final execution by the Ferguson company of the note in suit were merely for the accommodation of the Adams Company and therefore *ultra vires*—citing *Park Hotel Co. v. Fourth Nat. Bank,* 86 Fed. 742; *Smith v. Nelson Land & Cattle Co.,* 212 Fed. 56; 3 Thompson, Corporations (3d ed.) sec. 2300. The question is not without difficulty and its solution may be aided by examining the holdings of the courts in analogous situations. We will first consider the cases relied upon by the plaintiff.

*Woods Lumber Co. v. Moore,* 183 Cal. 497. In that

case a corporation, engaged in furnishing costumes under an existing contract to the producer of a motion picture film, guaranteed such producer's bill for lumber necessary to the production of the film, and the contract was held valid as being one essential to the successful prosecution of the business of the corporation. This case does not reach the point, because the guaranty there in question was made in the furtherance of the precise business of the corporation, to wit, the execution of its contract to supply costumes.

*Sturdevant Bros. & Co. v. Farmers & Merchants Bank,* 69 Neb. 220. There the action was upon a replevin bond signed by the bank as surety, and the contract was held *ultra vires.* It did not appear in that case the bank had any interest in the property replevied, nor any right or claim to protect, but it was said in the opinion: "A banking corporation, it would seem, is empowered to do any act or make any contract, even though under usual and ordinary circumstances such transaction is beyond the scope of its charter powers, if in the particular case the act was engaged in or contract entered into in furtherance of the business of the corporation or to protect it in its property rights or to maintain the integrity of the corporate entity. * * * If, in the case at bar, the defendant bank held a note against the plaintiff in the replevin action and a mortgage on the goods replevied securing the note, it would scarcely be doubted that it might not, for the purpose of collecting what was due it and thus protect its assets, execute as surety the replevin undertaking which the plaintiff in the replevin action was by statute required to give before regaining possession of the property." The case serves to illustrate that a corporation may make a valid contract under some circumstances or in some situations which might be *ultra vires* under other conditions.

*Burg & Sons, Inc., v. Twin City Four-Wheel Drive Co.,* 140 Minn. 101. The defendant corporation guaranteed an account of one of its salesmen for the purchase of

furniture. It appeared that the salesman had a number of "prospects" in view, and was considered by the corporation a very valuable employee, who threatened to quit the employment unless he received assistance, and the guaranty was executed for the purpose of retaining the salesman in the employ of the corporation. Holding the contract valid, the court said: "Of course, defendant corporation had no express power to guarantee or become surety for debts of its employees. But we think it may be said that such a power may be implied, as an incident to the business that the corporation was authorized to do. It can hardly be doubted that it would have had power to make an advance to White on account of salary or commission to be earned. Such a power is at least as broad as becoming surety for an employee's rent, coal, grocery or furniture bill, with the reasonable expectation that there will be no loss because he will earn enough to take care of the bill."

*First Nat. Bank v. Pacific Elevator Co.,* 159 Minn. 94. In that case it was held: "A corporation cannot become a mere accommodation surety for others unless expressly authorized to do so, but a corporation which is a large stockholder in another corporation has such an interest therein that it may become a surety on its obligations." And it was said in the opinion: "While a corporation cannot become a surety on obligations in which it has no interest, it may guarantee the obligations of its subsidiary companies, and this doctrine has been extended to permit it to guarantee the obligations of others where the purpose is to promote or protect its own rights or property interests, or to accomplish some legitimate object of financial benefit to it, and not merely to aid the primary obligor. The cases are cited and analyzed in *Woods Lumber Co. v. Moore,* 183 Cal. 497, and in the annotation found in 11 A. L. R. 554."

*Midland Telegraph Co. v. National Telegraph News Co.,* 236 Ill. 476. In that case the defendant corporation had guaranteed the lease of another corporation and, when

sued, pleaded *ultra vires*. The court found that the guaranty was executed for the benefit and in the regular operation of the business of the guarantor and therefore within its powers.

*First Nat. Bank v. Guardian Trust Co.*, 187 Mo. 494. The trust company had indorsed the note of a railroad company to the bank and, when sued, pleaded *ultra vires, that* it was a mere accommodation maker or indorser which the statute did not authorize. It was held, however: "The evidence shows that the trust company did not place its name on the back of the railroad company's note as a matter of accommodation but that it was induced to do so by reason of its interest in the railroad company, not only as a stockholder, but as a creditor, it having largely financed it, and sold its stock and loaned it money, and these facts were known by the bank. It was further shown that the money loaned to the railroad company on the note upon which the trust company is sued was used to pay pressing indebtedness, and that that payment was not only to the interest of the trust company as a stockholder, but increased its chances of finally realizing upon the debts due it from the railroad company. Held, that, under the circumstances, the defense of *ultra vires* will not avail."

*Richeson v. National Bank of Mena,* 96 Ark. 594. A lumber company owed the bank $11,650 and about $10,000 to other creditors, and procured a loan from the Hancock Land, Loan & Investment Company for $22,000, which executed a written obligation by which, in consideration of the loan made by it to the lumber company and the agreement on the part of the bank to extend the time of the payment of its indebtedness against the lumber company, it assumed and guaranteed the payment of the lumber company's debt to the bank, and when sued upon the guaranty pleaded *ultra vires*. The court said: "The loan company was engaged in loaning its money, and for its compensation it received the interest which accrued thereon. This benefit it actually received by the

execution of this contract. The bank, by virtue of the assumption by it of the bank's debt against the lumber company, extended the time of payment thereof. It could have taken steps to enforce its collection, but it stayed its hand by reason of the execution of this contract, and thereby it was caused to act to its disadvantage." The holding of the court was epitomized in the third paragraph of the syllabus: "When an *ultra vires* contract entered into by a corporation has been fully performed by the other party, and the corporation has had the benefits thereof, the contract is binding upon such corporation." We do not think this case helps us very much, as Ferguson & Company received no actual present benefit from its contract. True, it obtained an extension of time for its debtor, but that was no benefit to the Ferguson company if it was not liable on the note.

*Armour & Co. v. Rosenberg & Sons Co.*, 36 Cal. App. 773. In this case the defendant corporation guaranteed the account of the American Packing Company to the plaintiff, and in holding the contract *intra vires* the court said: "The American Packing Company, a customer, was in its (corporation defendant) debt to a considerable amount, which debt without the arrangement was a total loss. The agreement for the payment of the debt, and the promise of Lawton (the president of the packing company) to purchase exclusively from the defendant all the bottles required in his business, establish this fact. In both of these particulars the corporation was benefited by the agreement." It was further said: "The question presented by the different assignments of error is whether or not the general manager of a trading corporation has the implied power to guarantee debts or obligations of a customer or other person when such course is deemed by him necessary for the promotion of the business of the corporation. The obligation here guaranteed had relation to the corporation's own interest, and was designed to promote its own business. In such a case the rule now seems to be firmly established that

trading corporations may, in furtherance of their own interests, extend financial aid to their customers"—citing cases.

*Modoc County Bank v. Ringling,* 7 Fed. (2d) 535. That was an action against the bank on a guaranty of the performance of a contract by one of its depositors; the defense was *ultra vires.* In the opinion the court said: "The bank having already made the advance to a depositor, it. was manifestly for the interest of the bank as a business transaction, and in the conduct of its affairs, to secure reimbursement, if possible, and to do this it was presumably deemed advantageous to place itself behind Carter in the transaction. In other words, the agreement of guaranty, so far as appears in this record, was made by the bank in good faith and as incident to the transaction of its ordinary affairs and for its own benefit." And it was held that the bank had the power, as incident to its express power of loaning money, to guarantee the obligations of its own debtors in order to make its own loan more secure.

*Second Nat. Bank v. United States Fidelity & Guaranty Co.,* 266 Fed. 489. In this case it was held that the bank had the power to execute a bond of indemnity to a surety company against loss by reason of its suretyship for a bankrupt on its contract, to enable the trustees in bankruptcy to proceed with and complete the work; and it was said: "The question as to the wisdom of the directors in entering into an agreement of this kind is not involved; the real question being as to whether the banks at that stage of the proceedings had the power to enter into an agreement of this kind for the purpose of self-protection in the collection of their debts. In other words, were they not warranted in taking such steps as were necessary to conserve the assets of the banks, and could their acts in this respect be said to be *ultra vires?*"

A number of other cases are cited as illustrating the implied or incidental powers of corporations in the prosecution of their business. For example: *Horst v. Lewis,*

71 Neb. 365, on rehearing, 71 Neb. 370, holding that a brewing company had power to sign as surety the liquor bond of one of its customers; *Timm v. Grand Rapids Brewing Co.*, 160 Mich. 371, to indemnify a surety on the liquor bond of its customer; *Winterfield v. Cream City Brewing Co.*, 96 Wis. 239, to guarantee the rent of a customer; *Green Bay & M. R. Co. v. Union Steamboat Co.*, 107 U. S. 98, that a railroad company carrying passengers might guarantee that the receipts of a connecting steamboat company would equal a gross amount. There is considerable diversity of opinion in the decisions, occasioned largely by the special circumstances of each case; see annotation in 11 A. L. R. 554.

On the other hand, the defendant cites the case of *Johnson v. Johnson Bros.*, 108 Me. 272, which holds "that a defendant corporation was a large creditor of another company does not show such interest as to constitute a valid consideration for defendant's indorsement of the company's paper." In that case Johnson Brothers, a corporation, had indorsed a number of notes of the Monson Company, and the court having found that there were no such business relations between Johnson Brothers and the Monson Company as should be held to be a consideration for the indorsement of the paper in question, held the indorsements *ultra vires,* and in the opinion it is stated: "Johnson Brothers indorsed the notes to enable the Monson Company to receive the proceeds to use in its business in which, at the most, the indorser had no other interest than that of a voluntary creditor. The suggestion is made in some cases that a corporation may be impliedly authorized to loan its credit to its debtor if by so doing it could make available a debt due it, arising out of a reasonable exercise of its corporate powers, and which otherwise would be lost. It is not necessary, however, here to consider if that suggestion has merit, for it seems clear to us that the facts and circumstances of this case do not bring it within the reach of an application of such a doctrine. The inference seems justifiable that the prac-

tice of using the corporate name of Johnson Brothers for the benefit of the Monson Company had its inception and was continued not because it seemed imperatively necessary so to do in order to protect and secure the then existing indebtedness from that company to it, and save its own assets, but chiefly, if not solely, to advance and promote the affairs of the Monson Company, in which George W. and Ernest A. Johnson were so deeply interested. To hold that a trading corporation, having so improvidently conducted its affairs as to permit another corporation to become its debtor on open account and notes for more than ninety thousand dollars, for goods sold, money paid, advanced and loaned, during a period of nearly fifteen years, was also justified, because of that condition, in issuing accommodation paper for the benefit of such corporation, during the same period, would be, in the language of the late Judge Walton, 'a doctrine as startling as it would be unprecedented.' " The conclusion of the court was that the indorsement of Johnson Brothers was purely for accommodation, giving great weight to the finding of the referee on that point. The case is closely in point so far as the argument of the court is concerned, but its authority as a precedent is greatly weakened by the statement that "It is not necessary, however, here to consider if that suggestion has merit;" and whether we should follow it depends upon a critical examination of the charter of the defendant and the evidence appearing in the record. In that case neither the provisions of the charter nor the evidence is reported.

We think it must be conceded that the nature of the business of Ferguson & Company, as set forth in its charter, covers substantially all of the activities of the commercial world, from dealing in dairy products to the manufacture of brick, from dealing in merchandise and commodities of every class and description to the conduct and management of farms, the lending of money, and the dealing in grain, stocks and bonds, and, as already noted, the charter expressly provides: "The company shall have

power to do all acts or things necessary, incidental or convenient to do, or calculated, directly or indirectly, to promote the interests of the company, or enhance the value or render profitable any of its property or rights; and in carrying on its business, or for the purpose of obtaining or furthering any of its objects, to do any and all acts and things and to exercise any and all other powers which a natural person could do and exercise and which now or hereafter may be authorized by law." It appears to us that it would be a much easier task to catalogue the things that this corporation might not do than those which it was empowered to do under its articles. It is undoubtedly true that a contract of a corporation, to be within its powers, must have some relation to the business of the corporation, and must be entered into in the interest or for the benefit of the corporation, and the provision that it may exercise all the powers which a natural person could do is limited by the other provisions of the charter. *Greene v. Middlesborough Town and Lands Co.*, 121 Ky. 355. When not prohibited they are the same. *Herrick v. Humphrey Hardware Co.*, 73 Neb. 809. Whether the contract turned out to have been provident or the reverse, whether or not the corporation actually received any benefit from it or not, are questions which do not relate to the power of the corporation to enter into it. The question of the propriety, necessity or wisdom of entering into the contract is not for us to determine. *Second Nat. Bank v. United States Fidelity & Guaranty Co.*, 266 Fed. 489. Those questions belong to the governing body or, in most instances, the general manager of the corporation. *Modoc County Bank v. Ringling*, 7 Fed. (2d) 535. The party entering into the contract with the corporation need not concern himself with these questions; all he need do is to inquire whether the contract is within the power of the corporation under its charter, and unless or until the contrary appears he may assume that the governing authorities of the corporation have decided that the contract is for its interest and ben-

efit from the fact of its execution. *Modoc County Bank v. Ringling, supra.* The provision in the charter that the corporation has power "to guarantee the notes, bonds, obligations or dividends of any corporation in which this company may own twenty-five per cent. or more of the outstanding stock" is not restrictive of the general powers of the corporation in the transaction of its business. "A corporation cannot engage in a business in violation of an express prohibition. But this rule does not prevent a corporation from engaging in any business which is fairly and reasonably incidental to the carrying on of its principal business." 14-A C. J. 270. "Whatever transactions are fairly incidental or auxiliary to the main business of the corporation and necessary or expedient in the protection, care and management of its property, may be undertaken by the corporation and be within the scope of its corporate powers." *Teele v. Rockport Granite Co.,* 224 Mass. 20. Moreover, the indorsement of the notes in question was not a transaction within the spirit of the language quoted, which evidently contemplates a series of "notes, bonds," etc. National banks are not permitted to own real estate except what is necessary for the banking business, yet they may become such owners as the result of the transaction of the general business of banking. Contracts which are not contrary to the express provisions of the charter are presumed within the powers of the corporation and the burden is upon it to prove that the same is *ultra vires. Gorder v. Plattsmouth Canning Co.,* 36 Neb. 548. "If the means employed are naturally and reasonably adapted or appropriate to the ends for which the corporation was created, they come within its implied or incidental powers." 14-A C. J. 257.

Under the provisions of the charter quoted, the corporation is given power to do any act in the prosecution of its business to enhance the value of its property or rights that an individual may do; this subject, of course, to the restriction implied from the terms quoted, that the contract must have some relation to the purposes and

business of the corporation. The charter expressly empowers the corporation to loan money, and if it had loaned Adams Company $5,000, the transaction would not be open to question; there seems to be no material distinction where it lends its credit, provided always the transaction was connected with the corporate business or for its benefit. How often has it occurred to any one of us that a debtor has approached with a proposition for a further advance in order that he may better his position and finally be able to pay his debt; the question in such case for our decision is whether, under the circumstances, the chances of final payment will be enhanced by the further accommodation. Is there any good reason why a corporation, placed in the same position, may not take the same steps to protect its assets? And should it be permitted to plead its lack of power when the contract was entered into in the expectation that it would result to its benefit? In deciding that a corporation had power to guarantee payment of notes of a prospective customer it was held: "Guaranties given by a corporation in the reasonable prosecution of its business are within its corporate powers." *Blue Island Brewing Co. v. Fraatz,* 123 Ill. App. 26. The note in question appears to have been given to protect the corporate assets. It is said, and it is no doubt the general rule, that a corporation is not permitted to execute accommodation paper unless expressly authorized by its charter, and it is contended by the defendant that the note in question was of that character. But was it? No contract from which a party receives or believes and expects he will receive some financial benefit can be said to be purely for accommodation, and we think it reasonable to assume that in this case Ferguson & Company intended and expected to improve its chances of collection of its claims against Ferguson and the Adams Company by procuring the extension of time by the plaintiff of the note in question. All of the officers and directors of the corporation knew of these transactions covering a period of five years, and made no objection. A

corporation may "take such measures as are reasonably proper to protect its debtors so as to enable it to realize the amount of their indebtedness." *Hess v. Sloane,* 66 App. Div. (N. Y.) 522. "Rule that a corporation can neither make nor indorse commercial paper for accommodation, even though paid therefor, is not applicable where corporation assumes an obligation of another for the purpose of protecting its own interests." *Bacon v. Montauk Brewing Co.,* 130 App. Div. (N. Y.) 737.

It appears from the evidence that the defendant indorsed the note of the Adams Company to the Omaha National Bank for the sum of $10,000, and another for $2,000, and the individual note of Adams to one Ingles for $6,000. These transactions were of the same character as the one under investigation, having for their basis no connection with the business of the defendant except the indebtedness to it of the Adams Company and Adams. In each of these instances there was a resolution by the directors of the corporation authorizing the transaction; it would therefore seem that the corporation considered such transactions within its legitimate powers, thus placing a construction upon its own charter, which is a fact proper to be considered. *People v. Merchants Protective Corporation,* 189 Cal. 531. The absence of specific authorization by the board of directors is not material if the contract was within the general powers of the corporation, the authority of the president or general manager being sufficient. *Woods Lumber Co. v. Moore,* 183 Cal. 497. We think that the corporation is in no position to plead *ultra vires.*

In view of our holding upon the first point, it will not be necessary to discuss the question of estoppel. The judgment of the district court is

REVERSED.