DRAINAGE DISTRICT NO. 2 OF DAWSON COUNTY, APPELLEE, V. DAWSON COUNTY IRRIGATION COMPANY, APPELLANT.

2 N. W. (2d) 321

FILED FEBRUARY 6, 1942. No. 31291.

*Lyman M. Stuckey,* for appellant.

*York & York, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This is an action to recover the amount due upon a written contract. The cause was tried, by stipulation, to the court without a jury. Defendant appeals from a judgment against it.

Plaintiff's petition alleged that it was a corporation and political subdivision of the state existing by virtue of the laws relative to drains and drainage; that defendant is a private corporation existing by state law; that September 30, 1930, plaintiff and defendant entered into a written agreement, set out in full in the petition, whereby in consideration of plaintiff's agreeing to place a 36-inch-diameter vitrified clay pipe under defendant's main canal, of the reclaiming "of other lands" within the drainage district and of draining lands of the defendant, and "other valuable consideration," the defendant agreed to pay the plaintiff the sum of $2,639.75 in instalments over a period of twenty years. The agreement recited that the contract was in full settlement and in lieu of assessments and apportionment of benefits that have been or might be made against defendant's real estate within the boundaries of plaintiff's district. The plaintiff alleged that it had

fully performed its part of the contract; that defendant on November 2, 1937, had paid $395.97 on said contract; that it was in default on all other payments up to and including May 1, 1940, for which plaintiff prayed judgment.

Defendant by answer admitted the corporate capacities of the parties, the demand for payment of the sums alleged to be due and that they had not been paid, and denied generally. Defendant affirmatively alleged that it was incorporated for the purpose of constructing and maintaining a system of irrigation canals and laterals and doing acts necessary to the proper conveyance of irrigation water to lands under its system and set up five separate defenses as follows: (1) That there was no consideration for the contract; (2) that the plaintiff drainage district had no power to assess taxes against defendant's right of way; (3) that the contract is beyond the corporate power of the defendant corporation and is therefore *ultra vires*; (4) that the president of the defendant company had no authority either express or implied to enter into this contract; (5) that the debt created exceeded the statutory and charter debt limit of the defendant company and is therefore void.

Plaintiff by reply denied affirmative allegations of the answer, and alleged that defendant had retained the benefits of the contract; had ratified it by the payment; and was estopped to interpose the defense of *ultra vires* of the corporation or of its president.

The record sustains the following statement of facts: The defendant and its predecessors in title have operated an irrigation canal and lateral system for a number of years. It was organized in 1913 with Roy F. Stuckey, its principal stockholder, as president and managing official. He was in charge of its office, directed its affairs and made all decisions so far as dealings with other parties were concerned. In 1930 and prior thereto land in the area served by defendant needed drainage. Land to the north of it was seeped, and percolating waters and flood waters accumulated on the north side of defendant's ditch

and damaged land adjacent thereto. At least one action for seepage damage had been instituted. Plaintiff district was formed to drain the land south of the ditch. Its drainage ditch commenced at the south line of defendant's right of way and ran to the river. Plaintiff had apportioned benefits and proposed to assess defendant for the sum of $639.75. Verbal negotiations were conducted resulting in the contract in suit. Plaintiff did not assess defendant for benefits.

Plaintiff built the drain under defendant's ditch so that flood waters and seepage waters to the north of defendant's ditch could be drained into plaintiff's ditch. There is dispute in the record as to whether this was made of vitrified clay pipe or corrugated iron, and it appears to have been 48 inches in diameter. Apparently no complaint was made until the trial in January, 1941, as to the material used and none as to the size of the drain. That the drain served the purpose for which it was constructed is established by the evidence.

Defendant at no time questioned or denied its liability under the contract until about the beginning of this litigation in April, 1940. Repeated efforts made by plaintiff to collect the payments due failed because the defendant claimed to be short of money. Defendant, however, in November, 1937, did pay the plaintiff the sum of $395.97 to apply on this contract. This is the sum of the first three payments provided in the contract, without penalty interest. This payment was made by the defendant on direction of Roy F. Stuckey and later reported to defendant's board of directors at the annual meeting and approved by it. As late as the spring of 1940 Mr. Stuckey told plaintiff's attorney that the defendant "was short on operating money;" that it could pay $500. Mr. Stuckey further testified upon cross-examination: "Q. The truth is, if the Defendant Company had been in good shape, had plenty of cash on hand, and their finances were running along all right, the amount would have been paid to date today, isn't that right? A. It would have been paid, yes, that was the understanding."

Full payment of the amount then due was required and refused and this action instituted, resulting in a judgment for the plaintiff.

The defendant's assignments of error must be considered in the light of the rule that, where a jury is waived in a law action and the case tried to the court, the court's findings have the effect of a jury's verdict and will not be set aside on appeal unless clearly wrong. *Helleberg v. City of Kearney*, 139 Neb. 413, 297 N. W. 672; 2 Neb. Digest, Appeal & Error, sec. 1008 (2).

Defendant's third assignment of error, presented first in its argument, is "That the court erred in overruling defendant's motion to dismiss plaintiff's petition at the close of the plaintiff's evidence." This is based upon an alleged failure to prove a consideration. "A motion for a new trial is just as essential as the basis of proceedings in error where the final judgment or order rests upon findings by the court as upon the verdict of a jury." *Weber v. Kirkendall*, 44 Neb. 766, 63 N. W. 35. "In order that 'error of law occurring at the trial' may be considered by this court, it is necessary, under our uniform holding, that the district court's attention must have been called to the same by way of a motion for a new trial." *State v. Citizens State Bank*, 115 Neb. 271, 212 N. W. 616. Here a motion for a new trial was filed. However, the correctness of the ruling of the trial court in overruling defendant's motion to dismiss was not presented in the motion for a new trial and is not properly before us. It may be said, however, that a consideration for the contract was proved and performance by plaintiff established in its case in chief.

Defendant next contends that the finding for plaintiff was erroneous "as the evidence shows no consideration for the contract, shows no benefit to the defendant, and no detriment to the plaintiff, but does conclusively show that the plaintiff was doing nothing more than it was already bound by law to do." It appears that the original plans for the drainage of this area contemplated one district to build a drain ditch on both sides of defendant's canal and that

its plans included the construction of the underdrain involved in this contract. However, that district was not created. Plaintiff was organized and, apparently following those plans in part, constructed its drain, beginning, however, at the south line of defendant's canal. This contract was then entered into and the underdrain built by plaintiff as a result of the contract. Subsequently a drainage district was organized north of defendant's canal and emptied into the head end of plaintiff's drainage ditch at the underdrain. The latter district is not a party to this litigation and its organization and construction are not shown to have altered the terms of the contract here in suit. It may be that, in the light of subsequent events, the defendant did not receive all of the benefits it had hoped would flow from this contract and that some of the benefits it received as a result of the contract might have come to it as a result of the construcion of the latter district. But those events do not release it from liability under this contract. Hindsight is often more illuminating than foresight. Defendant received what it contracted to receive and cannot avoid liability because, ten years after plaintiff executed the contract, defendant considers that it made a poor bargain.

Defendant next contends that plaintiff had no power to assess benefits to defendant. The legality of any assessment of benefits or a tax is not presented. Plaintiff is not trying to collect any such an assessment. As stated herein plaintiff did apportion benefits to the defendant in the sum of $639.75 and that amount was used in arriving at the total of the obligation of the defendant under the contract here involved. A question was raised before the contract was entered into as to whether or not the defendant was subject to such an assessment. By the contract defendant accepted that amount as a part of the consideration which it agreed to pay. Further, in its motion to dismiss, defendant stated that it was "not going to raise any objections to the assessment at this time" and apparently conceded its liability to pay the $639.75, for it stated that, "so

far as this $2,000 above the $639, there has been no consideration whatsoever shown and I think this thing should be dismissed as to the $2,000, and the Ditch Company demand to pay $639 with interest at the date of the assessment." We find no merit in this contention of defendant.

Defendant next contends that the contract is *ultra vires* of the corporation in that under its articles it had no authority to enter into the business of draining lands. The question of its corporate powers to enter into the contract was not raised by it when the contract was made. This, like its other defenses, is raised years after the execution of the contract and full performance by plaintiff. The defendant had power by its articles "To build, construct, use and operate and maintain one or more ditches or canals * * *." It does not appear that there was a specific prohibition upon such a contract. It does appear that defendant's ditch caused flood and seepage waters to accumulate on the north side thereof; that defendant thought it to its advantage to remove the same and avoid damage to its own property and liability to others; and that the construction of the underdrain accomplished those purposes; and also that defendant used plaintiff's ditch to dispose of excess waters. The following holding of this court seems to dispose of this contention: "Whatever transactions are fairly incidental or auxiliary to the main business of the corporation and necessary or expedient in the protection, care and management of its property, may be undertaken by the corporation and be within the scope of its corporate powers." *Fremont Nat. Bank v. Ferguson & Co.*, 127 Neb. 307, 322, 255 N. W. 39.

Defendant's next contention is that the contract was *ultra vires* of its president. Mr. Stuckey testified that he did not have authority to enter into this contract. It appears from this record that Mr. Stuckey had sole management of the defendant's affairs. He testified as to contracts which he says were submitted to the board of directors, but apparently that was done after and not before the contracts were made. He entered into this contract for the de-

fendant, signing it as president, without questioning his authority to do so or advising plaintiff of any lack of power in himself. He made the payment in 1937 without the prior sanction of the board of directors, but with their approval when he reported it to them. Defendant does not now question that payment. The extent to which he submitted matters to the board may be illustrated by the fact that he could not name all the members of the board as of the date of the trial. It appears that throughout this transaction the action of Mr. Stuckey was to all intents and purposes the action of the defendant, and that Mr. Stuckey with the consent of the board was in sole responsible charge of defendant's property and business and was authorized to carry on the business for which the defendant was organized. Under these circumstances the following rules are applicable. " 'An act of an agent, although without actual authority from his principal, may be with such apparent authority as to bind his principal.' Such apparent authority of the agent cannot be extended or restricted by by-laws or other instructions to the agent by its principal, in the absence of actual notice thereof." *Sindelar v. Hord Grain Co.*, 116 Neb. 776, 219 N. W. 145.

But assuming that Mr. Stuckey acted without actual authority when this contract was entered into in 1930, certainly the corporation had knowledge of the unauthorized act when Mr. Stuckey reported to the board that he had paid the money to the plaintiff in 1937. The board of directors did not question his authority to enter into the contract when it was called to their attention. It affirmed that payment and of necessity thereby affirmed the contract. The following rule then becomes applicable. "The unauthorized acts of an officer of a corporation may be ratified by the corporation by conduct implying approval and adoption of the act in question. Such ratification may be express, or may be inferred from silence and inaction, and if the corporation, after having full knowledge of the unauthorized act, does not disavow the agency and disaffirm the transaction within a reasonable time, it will be deemed

to have ratified it:" *Citizens Savings Trust Co. v. Independent Lumber Co.*, 104 Neb. 631, 178 N. W. 270.

Defendant next contends that the contract is *ultra vires* of the corporation and void because at the time of its execution the corporation was in debt in an amount in excess of two-thirds of its capital stock. This contention is answered by the following holdings of this court: "Excessive indebtedness does not necessarily invalidate contract obligations, unless the statute so declares, and legislation to that effect has not been pointed out." *Nebraska Nat. Bank v. Parsons*, 115 Neb. 770, 215 N. W. 102. "The violation of the law in this respect does not avoid the transaction." *Smith v. First Nat. Bank of Chadron*, 45 Neb. 444, 63 N. W. 796. "A corporation may not, in violation of its charter, enter into a contract, whereby it receives and retains the benefit of its illegal contract, and then shield itself from liability for benefits received by pleading *ultra vires* as a defense." *Simmons v. Farmers Union Cooperative Ass'n*, 114 Neb. 463, 208 N. W. 144.

The judgment of the trial court is

AFFIRMED.