BANK OF VALLEY, A CORPORATION, APPELLEE, V. DUANE
C. SHUNK, APPELLANT.

337 N.W.2d 118

Filed July 29, 1983. No. 82-481.

David J. Lanphier of McGill, Koley, Parsonage & Lanphier, for appellant.

Richard J. Butler of Ginsburg, Rosenberg, Ginsburg, Cathcart, Curry & Gordon, for appellee.

BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

WHITE, J.

This case was before this court previously at 208 Neb. 200, 302 N.W.2d 711 (1981). The summary judgment for the plaintiff, Bank of Valley, was reversed and remanded for further proceedings. After trial

there was a verdict followed by a judgment entered for the plaintiff bank. The defendant, Duane C. Shunk, appeals, seeking to reverse the judgment. Our prior decision in this case contains a sufficient statement of the facts except as to some details which will be mentioned in the body of this opinion.

The defendant's only assignments of error on appeal are that the trial court erred in (1) failing to instruct on the issue of estoppel of the bank to deny that its president acted outside the scope of his authority, and (2) failing to instruct regarding the bank's ratification of its president's activities. The trial court's instruction Nos. 5 and 6 state as follows: "INSTRUCTION NO. 5    Your verdict will be for the plaintiff in the sum of $25,000, together with accrued interest unless the defendant proves by a preponderance of the evidence each and all of the following propositions:    A.    That Peter L. Heintzelman made misrepresentations with intent to deceive Duane Shunk for the purpose of inducing Duane Shunk to execute the promissory note; B.    That Peter L. Heintzelman made such misrepresentations as the agent of the plaintiff, Bank of Valley; C.    That Duane Shunk justifiably relied upon the misrepresentations; D.    That as a proximate result of the misrepresentations Duane Shunk executed the promissory note, EXHIBIT 3.

"If the defendant has failed to establish any one or more of the foregoing-lettered propositions by a preponderance of the evidence, your verdict will be for the plaintiff.

"On the other hand, if the defendant has established by a preponderance of the evidence all of the above-lettered propositions, then your verdict will be for the defendant."

"INSTRUCTION NO. 6   The acts or omissions of an agent are the acts or omissions of a principal only when the agent is acting within the scope of his authority.

"An agent is acting within the scope of his au-

thority when he is performing services for which he has been engaged or while he is doing anything which is reasonably incidental to his service. The test is not necessarily whether the specific conduct was expressly authorized or forbidden by the principal, but rather whether such conduct should have been foreseen from the nature of the service and the duties relating to it, and was brought about, at least in part, by a desire to serve the principal."

The instructions by the trial court informed the jury that its verdict could be for the defendant only if it found that the bank's president, Peter L. Heintzelman, was acting within the scope of his authority as the bank's agent at the time any alleged misrepresentation took place. We find these instructions to be correct, but incomplete.

It is a well-established principle of law that an affirmance of an unauthorized transaction can be inferred from a failure to repudiate it. Restatement (Second) of Agency § 94 (1958); *Kresha v. Kresha*, 211 Neb. 92, 317 N.W.2d 776 (1982); *Drainage District v. Dawson County Irrigation Co.*, 140 Neb. 866, 2 N.W.2d 321 (1942).

Ratification of an agent's unauthorized acts may be made by overt action or inferred from silence and inaction. *Kresha, supra.*

In the instant case, Robert Pease, vice president and director of the bank, reviewed the daily transactions and was aware of the fact that Heintzelman, the bank president, had obtained $75,000 from the defendant and two other bank customers, Don Rogert and Wilmer Mattson, in order to repay illegal loans that Heintzelman had made to himself from bank assets, and that Heintzelman was in financial difficulty. Pease contacted and met with Kermit Wagner, a bank holding company officer who acted as the bank's consultant, on February 23, 1977, to discuss the illegal loans from the bank to Heintzelman as well as the loans involving the three bank customers. A meeting between Heintzelman,

Pease, Wagner, and Wayne Woodberry, an account-ant, was held on February 25, 1977. Heintzelman disclosed the extent of his indebtedness at $350,000 and Wagner requested Heintzelman's resignation, which was received.

After the meeting, Pease advised Rogert, Mattson and the defendant of Heintzelman's financial prob-lems. Pease took possession of Mattson's $25,000 check and prepared an agreement. The agreement was drafted to complete the transaction between the bank customers so each would owe $25,000 rather than Rogert owing $50,000, since Rogert had ad-vanced the money for Mattson. The agreement also contained language which exculpated the bank from any liability in completing its president's actions. The defendant and the two other bank customers refused to sign the agreement. "Lake Aero, Inc.," a Rogert company, was filled in as payee on Mattson's check and the check was de-livered to Rogert, thereby completing the trans-action of Heintzelman. Heintzelman then issued a new note to Mattson for $25,000 and a note to Rogert for $25,000.

The bank thereafter refused to cancel the notes, and the assets of the estate of Heintzelman's mother were used to repay Heintzelman's other indebted-ness to the bank. This suit was then brought against defendant Shunk for the $25,000 note given to the bank.

In the case of *Thomas v. City Nat. Bank of Hast-ings*, 40 Neb. 501, 58 N.W. 943 (1894), a Mr. Elsmore and a Mr. Knowlton made and delivered promissory notes to Mr. Paul. Mr. Paul in turn gave the notes to the bank in payment of his debt to the bank. The bank's president sold the notes for value to the plain-tiff and placed the bank's guaranty on the notes. The bank kept the proceeds of the sale and used them to retire the outstanding debt from Mr. Paul. Mr. Elsmore and Mr. Knowlton became insolvent

and the plaintiff sued the bank upon its guaranty on the notes. The bank defended on the ground that its president acted outside the scope of his authority and the guaranty was made by him individually rather than on behalf of the bank. This court held that where the bank has retained and enjoyed the proceeds of the transaction, it amounted to a ratification of the president's acts. The *Thomas* case has not been cited by this court since that date, but its logic remains sound and is in harmony with our more recent cases upon the subject of ratification. The bank's completion of the transaction of its president and retention of the proceeds in this case amounted to a ratification of his acts. Thus, we have in effect also decided the estoppel issue by finding ratification, because the president's act is now the act of the bank as its agent whether or not he acted originally within the scope of his authority. See *Drainage District v. Dawson County Irrigation Co.*, 140 Neb. 866, 2 N.W.2d 321 (1942).

Since we are unable to determine the basis of the jury's verdict, i.e., whether the jury found that Heintzelman made misrepresentations to the defendant in the first instance, the cause must again be reversed and remanded to submit the entire issue to the jury, together with an instruction that if the misrepresentations were in fact made, the bank has ratified the transaction.

REVERSED AND REMANDED WITH DIRECTIONS.